UNITED STATES of America,
Plaintiff,

v.

Dorothy Arkie GREEN, Defendant.

Civ. A. No. 2031.

United States District Court
S. D. West Virginia.

Sept. 12, 1958.

Percy H. Brown, Asst. U. S. Atty., Hinton, W. Va., for plaintiff.

Kay, Casto & Chaney, Dale G. Casto and Edward H. Tiley, Jr., Charleston, W. Va., for defendant.

BEN MOORE, District Judge.

This is an action by the United States of America to recover from defendant amounts alleged to have been erroneously paid to her by the Veterans' Administration on two National Service Life Insurance Certificates in the face amounts of $4,000 and $5,000 respectively, issued to her son, Charles F. Green, Jr.

Charles F. Green, Jr., while in the United States Army, applied for and was granted three certificates of National Life Insurance. One of these certificates was effective July 1, 1942, in the amount of $1,000; another July 1, 1943, in the amount of $4,000; and the third October 1, 1943, in the amount of $5,000. He personally signed the applications for this insurance on the respective dates, June 22, 1942, June 25, 1943, and September 15, 1943. In each of the applications he designated his mother, Dorothy Green, defendant herein, as principal beneficiary and his father, Charles Frank Green, as contingent beneficiary.

All the certificates were written for a term of five years from their respective effective dates. However, on July 2, 1945 (Chapter 225, 59 Stat. 315, 38 U.S.C.A. § 802 note), Congress extended the term of all National Service Life Insurance issued on or before December 31, 1945, and not exchanged or converted prior to that date, for a period of three years.

Therefore, the expiration dates of the three insurance certificates became July 1, 1950, July 1, 1951, and October 1, 1951, respectively. Each certificate contained the provision that "[T]he insured may change the beneficiary without the consent of the previous beneficiary named."

During the period of Charles F. Green, Jr.'s army service, from June 20, 1942, to August 8, 1945, inclusive, the premiums for this insurance were deducted from his pay. After his discharge from the army, all premiums on these certificates and on other certificates issued as renewals, as hereinafter explained, were paid by defendant.

The $5,000 certificate lapsed for non-payment of premium in November 1945, and again all three certificates lapsed for non-payment of premium on June 7, 1948. Application for reinstatement because of the first lapse was made some time in November, 1945. Applications for reinstatement for the subsequent lapses were made under date of August 31, 1948. To all these applications for reinstatement, which contained no reference to beneficiaries, defendant signed the name of the insured, Charles F. Green, Jr., she having received all correspondence concerning the certificates, although the correspondence was addressed to the insured. There is no evidence that the insured even knew of these lapses. The certificates were reinstated, and continued in effect until their expiration.

Charles F. Green, Jr., was married on February 26, 1946, to Hattie Massey. Later in that year their first child, Emma Janet Green, was born, and in February of 1951, another child, Diana Lynn Green, was born.

On March 1, 1950, Charles F. Green, Jr., personally signed a request for change of beneficiary with respect to all the certificates of insurance then in effect, listing them by number, and directing that the beneficiary be changed to Emma Janet Green, his daughter, with his wife, Hattie Green, as contingent beneficiary. This designation was received at the office of the Veterans' Ad-

ministration on March 2, 1950. Defendant did not know that this change of beneficiary was being made, nor was she aware of it until after the death of the insured.

On May 29, 1950, the $1,000 certificate being about to expire, an application for renewal thereof was signed by the insured personally, which application listed his daughter, Emma Janet Green, as principal beneficiary, his wife, Hattie Green, as first contingent beneficiary, and his mother as second contingent beneficiary. The Veterans' Administration issued a renewal of this certificate, under a different number from that of the original. After insured's death the proceeds of the $1,000 certificate were paid to the guardian of Emma Janet Green, as principal beneficiary.

The next link in this rather tangled chain of events was the filing with the Veterans' Administration, on May 24, 1951, of an application for a renewal of the $4,000 certificate, which was to expire on July 1, 1951. This application was signed with the name of Charles F. Green, Jr., and was witnessed in the name of Madge J. Cummings, one of defendant's daughters. Defendant, however, wrote both names herself. The application is dated "6–23–1951," and Dorothy Green is listed as principal beneficiary and Emma Janet Green as contingent beneficiary. The Veterans' Administration issued a new certificate under a new number for this $4,000.

The insured himself signed an application for a renewal of the $5,000 certificate, which was to expire on October 1, 1951. This application bore no date, but an acknowledgment of remittance sent to the insured by the Veterans' Administration and filed in evidence indicates that the post mark date was September 25, 1951. In this application the name of Dorothy A. Green, mother, is written first, and that of Diana Lynn Green, daughter, is written second. On the line opposite the name of Dorothy A. Green appears the mis-spelled word "contigent." The name of Madge J. Cummings appears as a witness to the signature of

Charles F. Green, Jr. The stipulation of facts states that this application for a renewal "was disapproved because of failure to submit the 96th monthly premium." This stipulation seems in conflict with the documents themselves as admitted in evidence, since there is in evidence the acknowledgment by the Veterans' Administration dated October 5, 1951, of receipt of premium in the amount of $3.60, and a notation on the bottom of the application itself apparently indicates the same thing. It is, of course, possible that this premium may not have been the 96th premium mentioned in the stipulation. The application shows that a new number was assigned but this was not the number under which the renewal certificate for the $5,000 of insurance was ultimately issued.

On April 30, 1952, that being the very day after the insured died as a result of a slate fall in a mine, a second application for a renewal of the $5,000 certificate, which had expired on October 1, 1951, was received by the Veterans' Administration. This application bore the name of Charles F. Green, Jr., which was written by his mother. The beneficiary designation, in an unidentified handwriting obviously not that of defendant, is: "Principal, Dorothy A. Green, mother." No contingent beneficiary is named. A notation on the bottom of this application indicates that it was accompanied by remittances in the amounts of $21.60, $3.60 and $3.59. There are in evidence postal money order receipts in these same amounts dated April 28, 1952, that being the day before insured died. A renewal certificate bearing a new number was issued pursuant to this application.

Upon the death of the insured the Veterans' Administration paid to defendant the proceeds of the $4,000 and $5,000 certificates. Although not a part of the stipulation, it was stated by counsel for the United States at the hearing that the Veterans' Administration, on learning the facts which have been set out, paid the proceeds of the $4,000 and $5,000 certificates to the guardian of insured's two children. This action followed.

Defendant testified at the trial, over objection, that on some unnamed date insured said to her, in effect, that he had no money and that she should pay the premiums herself; that her reply was, "Okay, now if I pay them you know they are mine," to which he said, "Yes." She further said relative to the renewal applications that insured told her, "Go ahead and sign them." She disclaimed any knowledge of a change in the beneficiaries as originally listed, except as to the $1,000 certificate, which she said she knew about. She further testified that she herself filled in the application for a renewal of the $5,000 insurance certificate which was personally signed by insured about September 25, 1951, and that insured "said that he wanted me first beneficiary and his daughter second beneficiary," and with respect to the misspelled word, "contigent," that Madge said, "Now, you mean if * * * Mom is to be first beneficiary and then if anything happens to her it goes to Diana Lynn" and that insured replied, "That's right."

The other witnesses examined on behalf of defendant were Charles F. Green, insured's father, and Madge J. Cummings and Mary Etta Green, insured's sisters. The only material evidence of the father was that some time in 1950 or 1951 insured threw some papers down in his mother's presence and said, "Do what you want to do with it, drop it," and that she replied "Drop it? I have done put too much money in it to drop it."

Mary Green testified that insured, at unspecified times, "did tell Mom that if she paid the insurance it was hers," and that she once heard him say to defendant with reference to some paper, "Mom, you sign it and send it in."

Madge Cummings testified that she witnessed the application for renewal signed in person by insured about September 25, 1951; that she believed her mother printed the words written in the body of the application in ink, except

the mis-spelled word "contigent." As to that word she says that insured "looked the word up" in the dictionary and then told her to put it on the policy "beside my mother." "That's exactly where I put it." She further said that, in reporting the meaning of the word that he had "looked up" in the dictionary, insured said, "It depends on whether I live first or Mommy lives first," "That means depending on something happening to me or Mommy first it would go to Diana Lynn," and again, "Depending on something happening to me Mom would get the money."

I believe it is unnecessary to pass on the objection of counsel for plaintiff to the reception of defendant's own testimony with reference to transactions with the insured. Whether insured's heirs are interested in the outcome of this case so as to make the West Virginia "Dead Man's Statute", Code, 57–3–1, applicable, in view of the fact that they have already received payment of the full amount of the insurance from the Veterans' Administration; and whether it is applicable in view of the nature of this proceeding, arising as it does under Federal law; these are interesting questions; but the evidence of defendant is at best cumulative; and since I have concluded that even though her evidence be fully considered, as I have done, plaintiff must prevail, I shall not explore the legalities of the objection to her testimony.

It is provided in the law governing National Life Insurance that "[T]he insured shall have the right to designate the beneficiary or beneficiaries of the insurance * * * and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries * * ." Section 802, Subsection (g) Title 38 U.S. C.A.

It is conceded by counsel for defendant that, in cases involving National Service Life Insurance, the beneficiary, even though having paid all the premiums, has no vested right in the insurance, since the insured has the absolute right to change beneficiaries, under the above cited statute. It is contended, however, that, the original certificates having expired, the provisions relative to beneficiaries also expired, and that defendant, having, as she contends, authority to sign the applications for renewal on behalf of her son, Charles F. Green, Jr., and having continuously paid the premiums on the policies from August, 1945, until his death in 1952, and he having previously said to her in effect, "The certificates are yours," she therefore had the right to designate herself as principal beneficiary of these certificates and collect the money on them at his death.

I am inclined to agree that the designation of beneficiaries in the old certificates did not survive their expiration. However, the evidence adduced by defendant, including her own testimony, when viewed in the light of the documents submitted with the stipulation and otherwise, does not in my opinion suffice to overcome the implications contained in the documents themselves.

It was quite natural that Charles F. Green, Jr., as a single man, should list his mother as the beneficiary of his National Life Insurance. It was also natural that, after his marriage and the birth of a daughter, he should wish to change the beneficiaries so as to make his daughter the primary beneficiary and his wife the contingent beneficiary. He did this with the help of a person as witness to his signature who, as the evidence shows, was entirely unknown to at least one member of his family. Then, when it was time to renew the $1,000 of insurance, it was also to be expected that he should make his daughter the principal beneficiary thereof. These changes were kept a secret from his mother, no doubt because he was aware that, by reason of her having continuously paid the premiums, she was expecting the benefits of the insurance.

It is true that as to the $4,000 certificate there is no evidence that Charles F. Green, Jr., did anything whatever in applying for a renewal thereof; but neither is their any evidence that he directed his

mother to list herself as principal beneficiary in the renewal certificate, although she says he told her to sign all the papers which she did sign in his name. The fact that defendant wrote the name, "Madge J. Cummings," as a witness to the signature, instead of having it properly witnessed, still further discredits her claim. With reference to the application for renewal of the $5,000 certificate which was actually signed by Charles F. Green, Jr., and witnessed by Madge J. Cummings, I am of opinion that the oral testimony of the witnesses can not be permitted to vary the plain significance of the printed words. Charles F. Green, Jr., was not ignorant of the meaning of the phrase "contingent beneficiary." In the original applications for the original certificates, his father had been listed in each case as a contingent beneficiary. In his personal application for a change of beneficiaries in all the certificates, made on March 1, 1950, the word "contingent" was used in designating his wife as a beneficiary. In the application for renewal of the $1,000 certificate on May 29, 1950, both his wife and his mother were listed as contingent beneficiaries. It will not do for witnesses to say now that the use of the word on the application for renewal of the $5,000 certificate was made in any other than its natural meaning, and being placed opposite the name of defendant by direct order of Charles F. Green, Jr., to his sister Madge Cummings, it can be interpreted in no other way than as naming Dorothy A. Green as contingent beneficiary, the principal beneficiary being Diana Lynn Green, his daughter.

Although no certificate was issued pursuant to the application signed personally by Charles F. Green, Jr., in September of 1951, yet this is his last expression of his desire as to who should be principal beneficiary of the $5,000 of insurance. The fact that the Veterans' Administration, for whatever reason, did not issue the renewal pursuant to that application, but did issue a renewal certificate pursuant to an application submitted in April, 1952, signed by Charles F. Green, Jr.'s mother with his name, and listing Dorothy A. Green as principal beneficiary, can have no effect in contradiction of the insured's express designation.

It is not necessary here to determine who are the proper beneficiaries of the $4,000 certificate. It is enough to say, as I have indicated, that defendant did not have the right to make herself the principal beneficiary of this certificate. The law itself, as well as the certificate, provides who shall take the proceeds if no beneficiary is designated. This action is not one to declare or determine the rightful recipient of the proceeds of the insurance, but merely to recover from defendant money erroneously paid to her. Since, as I have said, she acquired no rights as principal beneficiary by listing herself as such in the applications for renewal, it follows that plaintiff is entitled to recover from defendant the sum of $9,043.98, that being the amount erroneously paid to her, together with interest thereon from the 14th day of December 1954, until paid.

An order may be entered in accordance with the foregoing opinion.